UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JASON WELLS,**
an individual,

Case No.

Plaintiff,

HON.

v.

**CHICAGO DIVERSIFIED FOODS
CORPORATION,** a corporation, and
**BORDER FOODS, INC.,**
a corporation,

**ORIGINAL COMPLAINT AND
JURY DEMAND**

Defendants.
_____/

**AVANTI LAW GROUP, PLLC**
Robert Anthony Alvarez (P66954)
Victoria L. Smalley (80179)
Attorneys for Plaintiff
600 28th St. SW
Wyoming, MI 49509
(616) 257-6807
ralvarez@avantilaw.com
_____/

## PLAINTIFF'S ORIGINAL COMPLAINT

### INTRODUCTION

1. This is a civil action brought by Plaintiff, Jason Wells, to recover for Defendants' willful and knowing violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, et seq. and in the alternative, the Michigan Workforce Opportunity Wage Act ("WOWA"), M.C.L.A. § 408.411, et seq. for Defendants' failure to pay Plaintiff the required overtime premium for all hours he worked in excess of forty hours per workweek.

2. During the period of the parties' employment relationship, Defendants misclassified Plaintiff as an exempt employee and failed to pay him overtime at a rate of one and one-half times his regular rate for hours worked in excess of forty (40) hours during a workweek.

3. Defendants actively misled Plaintiff about his right to receive payment at a rate of time-and-one-half the regular rate of pay for his hours of overtime worked by giving Plaintiff the title of Restaurant General Manager even though the majority of hours worked by Plaintiff is "on the line" hourly-employee work.

4. Plaintiff seeks a declaration that his rights were violated, an award of unpaid wages, an award of liquidated damages, and an award of attorney's fees and costs to make him whole for damages suffered.

## JURISDICTION & VENUE

5. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

6. Defendant businesses' annual sales exceed $500,000, and Defendants employ more than two persons, so the FLSA applies in this case on an enterprise basis.

7. Defendants' employees engage in interstate commerce; therefore, they are also covered by the FLSA on an individual basis.

8. The Court has supplemental jurisdiction over the state law claim asserted herein pursuant to 28 U.S.C. § 1367.

9. Supplemental jurisdiction is appropriate because Plaintiff's state law claim shares a common nucleus of operative fact with Plaintiff's federal claim and are most efficiently resolved together in one court.

10. Defendant businesses, at all relevant times, had employees working and restaurants located in Kent County, Michigan, within the United States Judicial District of the Western District of Michigan.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the actions and omissions giving rise to the claims pled in this complaint occurred in this District.

## PARTIES

12. Plaintiff is an individual resident of the County of Kent, state of Michigan.

13. Plaintiff began working for Defendant Chicago Diversified Foods, Corp. on or about May 26, 2016.

14. Plaintiff has executed his consent to sue form, attached hereto as *Exhibit A*.

15. Defendant Chicago Diversified Foods, Corp. is a franchise of Taco Bell Corporation which owns and operates forty-five restaurant locations in Michigan.

16. Defendant Border Foods, Inc. is a foreign profit corporation who recently purchased Defendant Chicago Diversified Foods, Corp., in approximately December 2016 and owns over one hundred and twenty Taco Bell locations across multiple states.

17. Both Defendants are or were at all times relevant an enterprise engaged in commerce or in the production of goods for commerce, as defined by FLSA.

18. Plaintiff was either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

19. Defendants employed Plaintiff within the meaning of 29 U.S.C. § 203(g).

20. Defendants underpaid Plaintiff by failing to to pay Plaintiff the required overtime premium for all hours he worked in excess of forty hours per workweek.

## **PLAINTIFF'S JOB DUTIES**

21. Plaintiff incorporates by reference the preceding paragraphs as though set forth fully herein.

22. Plaintiff was hired in May of 2016 to work for Defendant Chicago Diversified Food Corporation's restaurant located at 188 Chicago Drive, Jenison, Michigan as a Restaurant General Manager.

23. As a General Manager, Plaintiff's was told by Defendant Chicago Diversified Foods that his job duties included but were not limited to, scheduling, training, ordering, and inventory.

24. Defendants' advertise and their job posting for General Manager includes job duties of recruiting, hiring, training, scheduling, inventory and managing budget, *Exhibit B*.

25. As a General Manager, Plaintiff's schedule varied depending on how busy the restaurant was and if he had to cover shifts for other employees.

26. Plaintiff typically works five days a week, Tuesday through Saturday.

27. Defendant Chicago Diversified Foods Corporation scheduled Plaintiff for fifty hours a week.

28. Plaintiff's shifts are typically scheduled from 6:00 am to 4:00 pm or 10:00 am to 8:00 pm.

29. After Plaintiff's scheduled shift ends, Plaintiff is required to complete paperwork.

30. The paperwork required of Plaintiff typically takes about two hours a day to complete.

31. As a General Manager, Plaintiff works an average of sixty to sixty-five hours a week.

32. Plaintiff works an average of sixty to sixty-five hours a week because Defendant Chicago Diversified Foods scheduled him for fifty hours a week to fulfil hourly-employee shift coverage and the additional ten to fifteen hours is generally spent outside those scheduled shifts completing paperwork required of General Managers.

33. Plaintiff spends approximately ninety percent of his work day completing hourly-employee tasks, such as cashiering, food preparation, and taking orders.

34. As General Manager, Plaintiff has spent entire work days on the line, completing hourly-employee work duties.

35. Plaintiff has worked as many as seventy-five hours a work week for Defendant Chicago Diversified Foods Corporation.

36. As a General Manager, Plaintiff is required to go into work early or stay at work late in order to cover shifts of other employees.

37. As a General Manager, Plaintiff often had to complete work before his scheduled shift or after his scheduled shift.

38. Plaintiff was required to pick up food before the start of his shift, go into work early to unload food, and often brought work home with him.

39. As a General Manager, Plaintiff's actual job duties included but is not limited to working the line, taking orders, cashiering, and food preparation.

40. Plaintiff is responsible to work his scheduled shifts completing hourly-employee work with the added responsibility of completing paperwork that is required of a Restaurant General Manager.

41. It was and is nearly impossible for Plaintiff to complete his manager duties when scheduled to work shifts on the line as hourly-employees.

42. Plaintiff is paid on a salary basis regardless of the number of hours worked in a workweek.

43. Plaintiff's paychecks reflect Plaintiff works and is compensated for forty hours a week (*Exhibit C*).

44. Defendant Chicago Diversified Foods Corporation utilized a time tracking system to record time worked by employees.

45. Plaintiff was instructed by Chicago Diversified Foods Corporation not to punch into the time tracking system.

46. Defendant Chicago Diversified Foods Corporation did not schedule Plaintiff for any kind of lunch or break period.

47. Plaintiff did not take a lunch or break, as when he would try to take a lunch or a break, Plaintiff would be interrupted with work that needed his attention.

48. Defendant Chicago Diversified Foods did not compensate Plaintiff at a rate of one and one-half times his regular hourly rate for time worked over forty (40) hours per week as required by the FLSA and WOWA.

## DEFENDANT BORDER FOODS, INC.

49. Plaintiff incorporates by reference the preceding paragraphs as though set forth fully herein.

50. Defendant Border Foods, Inc. purchased Defendant Chicago Diversified Foods in approximately January 2016.

51. Defendant Border Foods, Inc. is Plaintiff's current employer.

52. Plaintiff's schedule continues to vary depending on how busy the restaurant is and if he has to cover shifts for other employees.

53. Plaintiff continues to typically work five days a week, Tuesday through Saturday.

54. Defendant Border Foods schedules Plaintiff for fifty hours a week.

55. As a Border Foods employee, Plaintiff continues to work an average of sixty to sixty-five hours a week.

56. Plaintiff works an average of sixty to sixty-five hours a week because Defendant Border Foods schedules him for fifty hours a week to fulfil hourly-employee shift coverage and the additional ten to fifteen hours is generally spent outside those scheduled shifts completing paperwork required of General Managers.

57. Plaintiff continues to spend approximately ninety percent of his work day completing hourly-employee tasks, such as cashiering, food preparation, and taking orders.

58. Plaintiff has worked as many as seventy-five hours a work week for Defendant Border Foods.

59. Plaintiff is still required to go into work early or stay at work late in order to cover shifts of other employees.

60. As a General Manager, Plaintiff often had to complete work before his scheduled shift or after his scheduled shift.

61. Plaintiff was required to pick up food before the start of his shift, go into work early to unload food, and often brought work home with him.

62. As a General Manager, Plaintiff's actual job duties included but is not limited to working the line, taking orders, cashiering, and food preparation.

63. Plaintiff is responsible to work his scheduled shifts completing hourly-employee work with the added responsibility of completing paperwork that is required of a Restaurant General Manager.

64. It was and is nearly impossible for Plaintiff to complete his manager duties when scheduled to work shifts on the line as hourly-employees.

65. As a Border Foods' employee, Plaintiff continues to be paid on a salary basis regardless of the number of hours worked in a workweek.

66. Plaintiff's paychecks reflect Plaintiff works and is compensated for one hundred hours every two weeks (*Exhibit D*).

67. Defendant Border Foods does not schedule Plaintiff for any kind of lunch or break period.

68. Plaintiff does not take a lunch or break, as when he tries to take a lunch or a break, Plaintiff would be interrupted with work that needed his attention.

69. Defendant Border Foods did not compensate Plaintiff at a rate of one and one-half times his regular hourly rate for time worked over forty (40) hours per week as required by the FLSA and WOWA.

## WILLFUL VIOLATION OF FLSA

70. Defendants used the title "manager" and salary compensation as an attempt to circumvent their obligation to pay Plaintiff the overtime premium compensation as required under the FLSA by misclassifying her as an exempt employee.

71. Defendants knew or should have known that simply classifying Plaintiff as an exempt employee and giving him a "manager" title was not sufficient under the law to exempt her from an overtime premium.

72. Plaintiff was misled as to his right to receive an overtime premium for all hours worked in excess of forty hours per week due to the following:
    a. Defendants misclassifying him as an exempt employee seemingly not entitled to an overtime premium; and
    b. Defendants hired Plaintiff as and gave him the title of "General Manager."

73. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid minimum and overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorney's fee.

## MISCLASSIFICATION AS AN EXEMPT EMPLOYEE

74. Defendants determined the rate of pay and the salary of the Plaintiff.

75. As General Manager, Plaintiff's primary job duty was working on the line from either 6:00 am to 4:00 pm or 10:00 am to 8:00 pm, five days a week.

76. Defendants scheduled Plaintiff to work the line from 6:00 am to 4:00 pm or 10:00 am to 8:00 pm, five days a week.

77. As General Manager, Plaintiff's secondary job duties included scheduling, training, ordering, and inventory.

78. Defendants prohibited Plaintiff from delegating his primary job duty of working the line to other employees.

79. As General Manager, Plaintiff had the same primary job duty (working the line) as other positions in which employees are paid at an hourly rate.

80. As General Manager, Plaintiff has a primary role as line worker but is expected to complete additional responsibilities and duties.

81. As General Manager, Plaintiff was able to interview potential employees but Defendants determined the rate of pay offered to those potential employees and Defendants made the ultimate determination whether those potential employees were offered employment or not.

82. Defendants controlled the manner in which the Plaintiff performed his work.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §201, et seq., FAILURE TO PAY OVERTIME

83. Plaintiff incorporates by reference the preceding paragraphs as though set forth fully herein.

84. At all times relevant to this action, Defendants were an "employer" under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, et seq.

85. Plaintiff was an "employee" of the Defendants as defined under 29 U.S.C. § 203(e)(1) of the FLSA.

86. Defendants "suffered or permitted" Plaintiff to work and thus "employed" Plaintiff as defined by the FLSA.

87. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

88. Defendants are engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

89. Defendants violated the FLSA by failing to pay Plaintiff an overtime premium for all hours worked in excess of 40 hours per workweek.

90. Defendants' violations of the FLSA were knowing and willful.

91. As a result of Defendants' violation, Plaintiff is entitled to his unpaid wages plus an additional equal amount in liquidated statutory damages along with costs and a reasonable attorney's fee.

## COUNT II
## VIOLATION OF THE MICHIGAN'S WORKFORCE OPPORTUNITY WAGE ACT, M.C.L.A. § 408.411, et seq., FAILURE TO PAY OVERTIME

92. Plaintiff hereby incorporates and realleges all the paragraphs above.

93. The Michigan's Workforce Opportunity Wage Act, makes it unlawful for an employer to pay an employee less than what is prescribed in the statute. M.C.L.A. § 408.411, et seq.

94. Defendants were an "employer" as defined under the WOWA at all relevant times.

95. Plaintiff was an "employee" as defined under the WOWA at all relevant times.

96. Defendants regularly suffered or permitted Plaintiff to work more than forty (40) hours per workweek.

97. Defendants did not pay Plaintiff one-and-a-half times his regular hourly rate for the hours worked in excess of forty hours in a workweek as mandated by Michigan law pursuant to M.C.L. § 408.414a.

98. The WOWA provides that as a remedy for a violation of the Act, an employee is entitled to overtime compensation and an equal additional amount as liquidated damages together with costs and such reasonable attorney fees.

99. Plaintiff is therefore entitled to his unpaid overtime wages as well as an equal amount as liquidated damages.

100. Pursuant to the WOWA, Plaintiff is also entitled to costs and a reasonable attorney's fee.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff request the following relief:

A. An Order declaring Defendants willfully violated the FLSA;

B. An Order declaring Defendants violated the WOWA;

C. An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff the full amount of damages and liquidated damages available to him under the FLSA;

D. An Order awarding reasonable attorney's fees and costs incurred by Plaintiff under the FLSA as provided by statute;

E. An Order awarding reasonable attorney's fees and costs incurred by Plaintiff under the Michigan WOWA as provided by statute; and

F. An Order awarding such other and further relief as this Court deems appropriate.

## VERIFICATION

I declare under penalty of perjury that the statements outlined above in this Original Complaint are true and accurate to the best of my knowledge, information and belief.

Date: 2/17/17         _____
                      Jason Wells

## REQUEST FOR TRIAL BY JURY

NOW COMES Plaintiff by and through his attorneys, Robert Anthony Alvarez, and hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: February 17, 2017         Respectfully Submitted,

/s/ Robert Anthony Alvarez
Robert Anthony Alvarez (P66954)
Attorney for Plaintiff
Avanti Law Group. PLLC
600 28th Street SW
Wyoming, MI 49509
(616) 257-6807
ralvarez@avantilaw.com